Jonathan I. Nirenberg (JIN 032431998)
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL BORLET, | Case No.: 2:20-cv-09495 (CCC/MF) |
| Plaintiff, | |
| v. | **NOTICE OF MOTION TO TRANSFER VENUE** |
| BECTON DICKINSON *and* COMPANY, | **MOTION DAY: MARCH 1, 2021** |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER VENUE**

On the Brief:
 Jonathan I. Nirenberg
 James N. Barkeley (admitted *pro hac vice*)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTURAL BACKGROUND ............................................................................................ 2

LEGAL ARGUMENT ......................................................................................................... 7

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Continental Grain Co. v. Barge F.B.L.*,
 364 U.S. 19 (1960) ............................................................................................................. 7

*Garcia v. Chrysler Grp. LLC*,
 2016 WL 5422018 (D.N.J. Sept. 27, 2016) ....................................................................... 7

*I-T-E Circuit Breaker Co. v. Regan*,
 348 F.2d 403 (8th Cir. 1965) ............................................................................................. 7

*Job Haines Home for the Aged v. Young*,
 936 F. Supp. 223 (D.N.J. 1996) ........................................................................................ 7

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) ................................................................................................ 7

*Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*,
 847 F.Supp. 1244 (D.N.J. 1994) ....................................................................................... 7

*Shorter v. United States*,
 2019 WL 1333747 (D.N.J. Mar. 25, 2019) ....................................................................... 7

*Van Dusen v. Barrack*,
 376 U.S. 612 (1964) ........................................................................................................... 7

*Ward v. Nat'l Entm't Collectibles Ass'n, Inc*,
 2011 WL 13128844 (D.N.J. Aug. 2, 2011) ....................................................................... 7

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................... 7

**Other Authorities**

15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 (1986) ....... 7

## **PRELIMINARY STATEMENT**

Plaintiff Michael Borlet hereby seeks to transfer venue from the District of New Jersey to the Northern Division of the District of Maryland pursuant to U.S.C. § 1404.

This is a disability discrimination claim brought under the Americans With Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("LAD"). Mr. Borlet is a war veteran who suffers from Post-Traumatic Stress Disorder ("PTSD"). He alleges Defendant Becton Dickinson ("BD") harassed and discriminated against him because of his disability, and retaliated against him when he objected thereto.

Since 2011, Mr. Borlet has been a resident of Baltimore, Maryland. Although BD is headquartered in New Jersey, it maintains offices throughout the United States, including an office in Baltimore County, Maryland, from which Borlet was able to perform the essential functions of his job.

Mr. Borlet seeks to transfer venue to the District of Maryland to provide easier access to his mental health provider, who is located in Maryland and ready access to his therapist should an urgent need for such services arise and for his comfort and for his state of mind, during the course of this litigation up to and including the trial. Having the case litigated close to Mr. Borlet's home in Maryland is especially critical given that Mr. Borlet previously has had suicidal ideation stemming from BD's harassment and discrimination.

At the time of the filing of his Complaint, Mr. Borlet filed in the District of New Jersey because his counsel was located in New Jersey and BD's headquarters is in New Jersey. But, while some of the alleged illegal acts took place at Defendant's offices in New Jersey, many of the important events occurred in Maryland. It is likely that some of the most important fact

witnesses in this case are individuals who work or reside in Maryland.  It also is likely that Mr. Borlet will designate an expert witness from Maryland.

## FACTURAL BACKGROUND

This action is brought by Plaintiff Michael Borlet against his former employer, BD.  As detailed in the Complaint, Mr. Borlet is a military veteran who is disabled within the meaning of the ADA and the LAD in that he suffers from PTSD.  Mr. Borlet alleges in this lawsuit that BD failed to provide him reasonable accommodations, consider him for promotions, and allow him to perform the essential functions of his job and of other jobs for which he applied or attempted to apply.  Mr. Borlet further alleges that, after he complained about BD's failure to provide him with a reasonable accommodation, including going so far as to threatening to file a charge of discrimination at the United States Equal Opportunity Commission ("EEOC"), BD summarily terminated his employment, advising him that it was accepting his "resignation" despite the fact that he never offered to resign.

Mr. Borlet, like many veterans, initially did not make his condition known to his employer, but nonetheless steadily ascended the corporate ladder, becoming Vice President of BD's United States Operations.  His symptoms from PTSD did not interfere with ability to perform the essential functions of his job until Alex Conroy became his supervisor.  Mr. Conroy incessantly bullied Mr. Borlet and discriminated against Mr. Borlet regarding the terms and conditions of his employment.  Eventually, Mr. Borlet complained about being the victim of bullying, which not only violated his rights under the ADA and the LAD, but also violated the express terms of BD policies concerning this type of conduct.  Mr. Borlet began to experience a full spectrum of disabling symptoms of his PTSD, including suicidal ideation, until he accepted a demotion to avoid Mr. Conroy's supervision.

Since 2011, Mr. Borlet has been and continues to be a resident of Baltimore, Maryland. (Borlet Cert., ¶2).

BD maintains significant offices within the District of Maryland, and employs hundreds of workers, some of whom may be witnesses in this case. (*Id.*, ¶5). For example, BD designated its Senior Director of Human Resources, Nicole Thompson, who works for BD in Maryland, as Mr. Borlet's contact for all matters related to his request for reasonable accommodations, and subsequently in connection with BD's termination of his employment. (*Id.*; Exhibits 1-4).

Many other important events related to Mr. Borlet's claims occurred in Maryland. (*Id.*, ¶6). By way of example, this included the following events:

- Virtually all of Mr. Borlet's conversations with Ms. Thompson were in Maryland. For example, he was in Maryland when he disclosed to Ms. Thompson, and entered in BD's Human Resources system, that he had a disability as defined by the ADA. (*Id.*, ¶6a). At the time, Ms. Thompson discussed with Mr. Borlet whether he needed a reasonable accommodation for his disability, and Mr. Borlet told Ms. Thompson that he had been bullied by his previous supervisor, Alexandre Conroy. (*Id.*).

- In approximately February 2019, after Mr. Borlet told James Condie, the hiring manager, that he was interested in the VP/GM role, Ms. Thompson followed-up with Mr. Borlet in person in Maryland. (*Id.*, ¶6b). During that meeting, Mr. Borlet disclosed to Ms. Thompson that his disability is PTSD, and asked to limit his interview to only Dave Hickey, the dotted line manager, and Mr. Condie, in his role as the hiring manager, so he could disclose his disability only to them. (*Id.*). Ms. Thompson told Mr. Borlet that he needed to interview with the full

3

panel of approximately 8 people, and would need to explain to them why he left his previous VP/GM position. (*Id.*). Mr. Borlet told Ms. Thompson he did not believe everyone needed to know about his disability, but that without disclosing it he could not explain why he left his former position and accepted a demotion. (*Id.*). Ms. Thompson told Mr. Borlet he still needed to interview with the full panel. (*Id.*).

Approximately a few weeks later, in a conversation that took place in Maryland, Ms. Thompson asked Mr. Borlet if he was going to interview for the VP/GM position. (*Id.*, ¶6c). Mr. Borlet told Ms. Thompson there was no reason for him to interview for the position if the decision already had been made that he was not going to get the job and that he would not be given a reasonable accommodation for his disability. (*Id.*).

- In approximately March 2018, Mr. Borlet met with Tom Polen in person at BD's Maryland office. (*Id.*, ¶6d). At the time, Mr. Polen was BD's Worldwide President. He currently is BD's CEO and Chairman of the Board. During their conversation, Mr. Polen confirmed that Mr. Borlet had excelled in all of his leadership roles, and that his best performance was as the Vice Present/General Manager of MPS. Mr. Borlet told Mr. Polen about Mr. Conroy's bullying and harassing him while he was in that previous VP/GM role, and explained why he left the role. Mr. Polen told Mr. Borlet that BD had assigned Mr. Conroy a coach due to his bullying, and that Mr. Conroy had claimed the reason Mr. Borlet left his previous role was because Mr. Borlet wanted less stress.

- Mr. Borlet received two performance appraisals from BD while he was in Maryland, both of which resulted in him receiving below the target stock allocations. (*Id.*, ¶6e).

- Mr. Borlet initially connected BD's "Ethics Office," via telephone, while he was in Maryland. (*Id.*, ¶6f).

- Mr. Borlet was in Maryland when he called Ms. Thompson and told her that he was not going to sign BD's proposed separation agreement. (*Id.*, ¶6g).

- Mr. Borlet was in Maryland when he subsequently sent a text message and spoke to his manager to let him know he was not going to sign BD's proposed severance agreement, but rather would remain employed at BD. (*Id.*, ¶6h). During that conversation, Mr. Borlet stated that he planned to file a claim with the United States Equal Opportunity Commission. (*Id.*).

- Mr. Borlet was in Maryland on or about December 19, 2019, when Ms. Thompson called him and told him that BD was accepting his supposed resignation in June. (*Id.*, ¶6i). In response, Mr. Borlet told Ms. Thompson that he never resigned. (*Id.*).

- Ms. Thompson subsequently sent Mr. Borlet a termination letter to his Maryland address. (*Id.*, ¶6j).

- On or about January 10, 2020, Mr. Borlet met with Ms. Thompson in person at his office in Maryland. (*Id.*, ¶6k).

- Ms. Thompson followed up on her January 10, 2020 conversation with Mr. Borlet by sending him another letter to his home in Maryland. (*Id.*, ¶6l).

5

- On or about January 22, 2020, Ms. Thompson called Mr. Borlet in Maryland and told him that BD was terminating his employment at the end of the day. (*Id.*, ¶6m).

Mr. Borlet has obtained the help of a psychologist in Maryland, Dr. Michael Bombadier, who has significant experience helping war veterans cope with PTSD. (*Id.*, ¶3). All of the treatment Dr. Bombadier and other professionals have rendered to Mr. Borlet has occurred in Maryland. (*Id.*). Dr. Bombadier and Mr. Borlet's other treatment professionals, including professionals employed by the Veterans' Administration, who are likely to be key witnesses in this case, are located in Maryland. (*Id.*). Maryland also is where Mr. Borlet's family and friends, and thus Mr. Borlet's support network, are located. (*Id.*).

Mr. Borlet filed his administrative charge with the United States Equal Opportunity Commission alleging disability discrimination under the ADA at the EEOC Baltimore, Maryland office. (*Id.*, ¶4).

Given that Mr. Borlet's therapist's network of friends and professionals are in Maryland, Maryland is the state from which any expert witnesses designated by Mr. Borlet is likely to be located. (*Id.*, ¶7). Finally, Maryland is where Mr. Borlet's new lead counsel has his offices, minutes from Mr. Borlet's residence and near the Veterans' Administration Hospital. (*Id.*, ¶8).

## LEGAL ARGUMENT

Mr. Borlet asks this Court to transfer venue of this matter to the Northern Division of the District of Maryland. The venue transfer statute states "that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion to transfer venue can be made by any party, including the plaintiff. See, *I-T-E Circuit Breaker Co. v. Regan*, 348 F.2d 403, 404 (8th Cir. 1965); *Shorter v. United States*, 2019 WL 1333747, at *1 (D.N.J. Mar. 25, 2019) (granting Plaintiff's motion to transfer venue to "the District in which Plaintiff now lives and is the most convenient forum for Plaintiff"); *Ward v. Nat'l Entm't Collectibles Ass'n, Inc*, 2011 WL 13128844, at *2 (D.N.J. Aug. 2, 2011); *Garcia v. Chrysler Grp. LLC*, 2016 WL 5422018 (D.N.J. Sept. 27, 2016).

The "purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) quoting *Continental Grain Co. v. Barge F.B.L.*, 364 U.S. 19, 26 (1960)). The last factor, "the interest of justice*,"* is the most important. *I-T-E Circuit Breaker*, 348 F.2d at 405 (noting that witnesses and party convenience are actually relevant insofar as they further the end of justice); see also, 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 (1986)).

The decision whether to transfer venue is within the broad discretion of the District Court. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). Courts "generally assign the plaintiff's choice of forum significant weight. *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227-28 (D.N.J. 1996) (citing *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F.Supp. 1244, 1246 (D.N.J. 1994)).

As detailed in the Statement of Facts, above, numerous key meetings and communications took place in Maryland, including ones about Mr. Borlet's disability and need for reasonable accommodations; Mr. Borlet's job performance; Mr. Borlet's interest in a promotion back to a Vice President/General Manager position; Mr. Borlet's request to limit the disclosure of his disability and BD's refusal to do so; Mr. Borlet's contact with BD's Ethics Office; Mr. Borlet's rejection of BD's severance offer; BD's false claim that Mr. Borlet had resigned; and BD's decision to terminate Mr. Borlet's employment.  (Borlet Cert., ¶6).

The only persons likely to be inconvenienced by transferring this case to the District of Maryland would be a few witnesses who work out of BD's headquarters in New Jersey, and Defendant's counsel.  Any inconvenience to witnesses who work in New Jersey easily can be minimized by conducting their depositions in New Jersey.

Written discovery has not yet begun except for the perfunctory information included in Rule 26 disclosures, and in any event written discovery typically is conducted remotely, and therefore neither party would suffer any prejudice as a result of transfer.  It would appear that virtually all of the factors, including parties' and witnesses' convenience militate in favor of transferring venue.

In stark contrast, it would be extremely problematic for Mr. Borlet, an individual who suffers from PTSD and has previously experienced suicidal ideation, to attend a trial in the State of New Jersey, which would require him to spend an extended and extremely stressful period away from his entire support network, including Dr. Bombadier and other mental health professionals, as well as his family and friends.  Accordingly, it is respectfully submitted that, the interests of justice, this case should be transferred to the District of Maryland.

## **CONCLUSION**

Therefore, it is respectfully submitted that the Court should transfer venue of this case to the District of Maryland.

                                                Rabner Baumgart Ben-Asher
                                                 & Nirenberg, P.C.

Dated: February 5, 2021                By:   <u>/s Jonathan I. Nirenberg</u>
                                                     Jonathan I. Nirenberg