## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL BORLET, | : | |
| | : | CIVIL ACTION NO. 2:20-cv-09495 |
| Plaintiff, | : | (CCC/MF) |
| | : | |
| v. | : | |
| | : | |
| BECTON, DICKINSON AND | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE

---

John K. Bennett, Esq. (Bar ID #024201980)
Leslie A. Saint, Esq. (Bar ID #018022008)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANT

Of Counsel and on the brief:
    John K. Bennett, Esq.

On the brief:
    Leslie A. Saint, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF RELEVANT FACTS ...........................................................................3

LEGAL ARGUMENT .......................................................................................................7

      POINT I

      PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE ONLY
      PROPER VENUE FOR PLAINTIFF'S ADA CLAIM IS THE DISTRICT
      COURT OF NEW JERSEY ..............................................................................7

      POINT II

      PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE VENUE IS
      PROPER IN THE DISTRICT OF NEW JERSEY PURSUANT TO
      28 U.S.C. § 1404(A) ......................................................................................10

      A.     The Private Interest Factors Favor Maintaining Venue in the District
             Of New Jersey ......................................................................................11

      B.     The Public Interest Factors Favor Maintaining Venue in the District
             Of New Jersey ......................................................................................14

CONCLUSION ..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bolar v. Frank,
    938 F.2d 377 (2d Cir. 1991)......................................................................... 9

Calkins v. Dollarland, Inc.,
    117 F. Supp. 2d 421 (D.N.J. 2000) .................................................................. 11

Chiste v. Hotels.com LP,
    756 F.Supp.2d 382 (S.D.N.Y. 2010)................................................................. 12

Commodity Futures Trading Comm'n v. Perkins,
    No. 06-4674, 2007 U.S. Dist. LEXIS 52326 (D.N.J. July 18, 2007)......................10

In re Consolidated Parlodel Litigation,
    22 F. Supp. 2d 320 (D.N.J. 1998) ...............................................................11, 12

Dahl v. United Technologies Corp.,
    632 F.2d 1027 (3d Cir. 1980)........................................................................15

Delta Air Lines, Inc. v. Chimet, S.P.A.,
    619 F.3d 288 (3d Cir. 2010).........................................................................15

deRojas v. Trans States Airlines, Inc.,
    204 F.R.D. 265 (D.N.J. 2001)........................................................................9

Effron v. Sun Line Cruises, Inc.,
    67 F.3d 7 (2d Cir. 1995).............................................................................14

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947).................................................................................15

Hudson United Bank v. Chase Manhattan Bank,
    832 F. Supp. 881 (D.N.J. 1993), aff'd, 43 F.3d 843 (3d Cir. 1994) .......................10

Liggett Group Inc. v. R.J. Reynolds Tobacco Co.,
    102 F. Supp. 2d 518 (D.N.J. 2000) ..................................................................12

Johnson v. Deloitte Services, LLP,
    939 F.Supp.2d 1 (D.D.C. 2013)......................................................................8

Jumara v. State Farm Ins. Co.,
    55 F.3d 873 (3d Cir. 1995)...............................................................7, 10, 11, 13

Kabacinski v. Bostrom Seating, Inc.,
   98 Fed. Appx. 78 (3d Cir. 2004) ..................................................................8

Krulisky v. Bristol-Myers Squibb Co.,
   2011 U.S. Dist. LEXIS 68449 (S.D.N.Y., June 27, 2011) ..........................11

Mendoza v. U.S. Custom and Border Protection,
   2007 U.S. Dist. LEXIS 18963 (D.N.J. March 19, 2007) ............................11

Optopics Labs. Corp. v. Nicholas,
   947 F. Supp. 817 (D.N.J. 1995) ..................................................................15

Ryan v. Hyden,
   2012 U.S. Dist. LEXIS 109102 (S.D. Cal. Aug. 3, 2012) ..........................14

Santi v. Nat'l Bus. Records Mgmt., LLC,
   722 F. Supp. 2d 602 (D.N.J. 2010) ............................................................10

Shoreman v. Geithner,
   2012 U.S. Dist. LEXIS 115259 (S.D. Ga., Aug. 15, 2012) ..........................8

Stewart Org., Inc. v. Ricoh Corp.,
   487 U.S. 22 (U.S. 1988) ..............................................................................14

Thomas v. Exxon Mobil Oil Corp.,
   No. 2:06-cv-144, 2007 U.S. Dist. LEXIS 9689 (N.D. Ind. Feb. 8, 2007) ...9

Utoafili v. Trident Seafoods Corp.,
   2009 U.S. Dist. LEXIS 127109 (N.D. Cal. Oct. 19, 2009) ........................14

Windt v. Qwest Comm'ns Int'l, Inc.,
   529 F.3d 183 (3d Cir. 2008) ........................................................................15

**Statutes**

28 U.S.C. §§ 1391 (b)(1), (2) ...............................................................................12

28 U.S.C. § 1404(a) ...........................................................................................2, 10

42 U.S.C. 2000e-5(f)(3) ......................................................................................2, 8

42 U.S.C. § 12117(a) ..............................................................................................7

42 U.S.C.S. § 12116 ................................................................................................7

42 U.S.C. § 2000 ff-6(a)(1) .....................................................................................7

N.J.S.A. 10:5-12, *et seq.* ......................................................................................12

## PRELIMINARY STATEMENT

Defendant, Becton, Dickinson and Company ("BD"), submits this brief in opposition to the motion of Plaintiff, Michael Borlet, to transfer the venue of this action, which he chose to file in this District on July 27, 2020, from this District to the District of Maryland.

In Plaintiff's Complaint, he claims that BD terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* Plaintiff alleges that BD discriminated and retaliated against him on the basis of his disability – alleged post-traumatic stress disorder ("PTSD") – stemming from his military service prior to his employment with BD. Plaintiff claims that BD denied him reasonable accommodations which he alleges he requested. BD denies Plaintiff's claims of any unlawful treatment of him.

In July 2019, Plaintiff informed BD that he wanted to leave his employment with BD, and requested a separation agreement. Over the course of the ensuing several months, BD worked with Plaintiff to negotiate the terms of a separation agreement; however, the agreement was not signed, because Plaintiff balked at the non-disparagement provisions of the agreement. Plaintiff never provided BD with alternative non-disparagement language to consider. Instead, he retained legal counsel and took the position that he would not enter into a separation agreement and BD would have to terminate his employment involuntarily.

By January 2020, BD, having made business organizational changes based in part on Plaintiff's stated decision to leave BD, had no choice but to separate Plaintiff's employment, as BD needed to move ahead with its business transition plan. BD's decision to separate Plaintiff's employment was based on legitimate, non-discriminatory and non-retaliatory reasons.

Plaintiff, after filing this action in this District nearly seven (7) months ago, and having changed his legal counsel, now brings this motion to transfer the venue of this action from this District to the District of Maryland under the federal venue provision, 28 U.S.C. § 1404(a). The crux of Plaintiff's argument is that a transfer to the District of Maryland would ease his comfort level, be better for his state of mind, and provide him with easy access to his mental health provider because he resides in the state of Maryland. Plaintiff essentially is trying to undo the fact that he himself elected this venue when he filed his Complaint in this action in this District. As a matter of law, none of Plaintiff's stated reasons for seeking a transfer are among the factors that a Court is required to consider when reviewing a request made pursuant to 28 U.S.C. § 1404(a).

Plaintiff's arguments for a transfer of venue are unavailing for the additional reason that Title VII, which the ADA incorporates by reference, has an exclusive venue provision, 42 U.S.C. 2000e-5(f)(3). As a matter of law, venue in Title VII cases is appropriate only in the judicial district where "the unlawful employment practice is alleged to have been committed," where "records relevant to such practice are maintained and administered," or where "the aggrieved person would have worked but for the alleged unlawful employment practice." Section 5(f)(3) is not simply a supplement to the federal venue provision; it is the *exclusive* venue provision for all Title VII discrimination actions. In short, the only proper venue for this action under the ADA, is the District of New Jersey.

To the extent the Court considers the merits of Plaintiff's arguments under 28 U.S.C. § 1404(a) notwithstanding the controlling effect of 42 U.S.C. 2000e-5(f)(3), it should deny Plaintiff's request because he conveniently ignores the underlying facts of the case. In stark contrast to the allegations in his Complaint, Plaintiff now asserts, for the first time, that many of

2

the "important events" giving rise to his Complaint occurred at BD's Sparks Glencoe, Maryland facility where he worked when not working from BD's Franklin Lakes, New Jersey headquarters and principal offices. The facts and allegations set forth in Plaintiff's Complaint, however, demonstrate that all of the alleged operative events giving rise to his claims occurred at BD's Franklin Lakes, New Jersey headquarters. The majority of the witnesses identified in the Complaint work or worked for BD in New Jersey, and are presently located in New Jersey.  In short, Plaintiff cannot deny that the center of gravity of the litigation is in New Jersey, and that venue is only proper in the District of New Jersey.

For the reasons set forth herein, and as supported by applicable case law, this Court should deny Plaintiff's motion to transfer venue to the District of Maryland.

## STATEMENT OF RELEVANT FACTS[1]

Plaintiff alleges that BD discriminated and retaliated against him by refusing to offer him a reasonable accommodation, denying him the opportunity to interview for an upper managerial position and forcing him to agree to a severance package proposed by BD.

### 1. Relevant Background Facts.

BD maintains its principal place of business in Franklin Lakes, New Jersey (Declaration of John K. Bennett, Esq. ("Bennett Decl."), Exhibit A, at ¶ 3).  In his Complaint, Plaintiff alleges that he worked for BD for a cumulative period of fifteen and one half years prior to his employment ending in January 2020 (Bennett Decl., Exhibit A, at ¶¶ 13; 65). Plaintiff commuted from his home in Baltimore County, Maryland, to Franklin Lakes, New Jersey for employment

---

[1]  Solely for the limited purposes of this motion, the Statement of Facts is based upon the allegations in Plaintiff's Complaint, and is augmented by the facts set forth in the Declarations of John K. Bennett, Esq., and Nicole Thompson submitted herewith.

purposes at the time many of the events giving rise to his allegations occurred (Bennett Decl., Exhibit A, at ¶ 9; Declaration of Nicole Thompson ("Thompson Decl."), at ¶¶ 3-4).

**2.  The Facts Giving Rise to Plaintiff's Disability Discrimination Claims.**

Plaintiff alleges that he disclosed his PTSD diagnosis to BD in June 2017 (Bennett Decl., Exhibit A, at ¶¶ 35-36).  Plaintiff claims that as a result of his PTSD, he requested, but was denied, a reasonable accommodation related to the interview process for a new opening, Vice President/General Manager ("VP/GM"), in which he had expressed interest (Bennett Decl., Exhibit A, at ¶¶ 44-45). Plaintiff alleges he made this request for a reasonable accommodation sometime in either January or February 2019 (Id.).  According to Plaintiff's Complaint, Plaintiff spoke with Nicole Thompson ("Ms. Thompson"), Human Resources Sr. Director for the U.S. Region and Canada, James Condie ("Mr. Condie"), President, BD US and Canada, and Steve Gunderson ("Mr. Gunderson"), his supervisor at the time, about his request for an accommodation (Bennett Decl., Exhibit A, at ¶¶ 47-48).  Plaintiff claims that his request was denied (Bennett Decl., Exhibit A, at ¶¶ 47-48).

Ms. Thompson works out of BD's Sparks, Maryland facility, but commutes to BD's headquarters and principal offices in Franklin Lakes, New Jersey, for business-related purposes as needed (Thompson Decl., at ¶ 5). At the time of the events giving rise to Plaintiff's Complaint, both Mr. Condie and Mr. Gunderson worked at BD's Franklin Lakes, New Jersey headquarters (Thompson Decl., at ¶¶ 11-12).

**3.  The Facts Giving Rise to Plaintiff's Retaliation Claims.**

In June 2017, Plaintiff had a dinner conversation with Mr. Condie, in which Plaintiff told Mr. Condie that his then-current position was too stressful for him and that he could not take the criticism by his manager, Alex Conroy ("Mr. Conroy"), of some aspects of his job performance

(Bennett Decl., Exhibit B, at ¶ 36).  Plaintiff also told Mr. Condie that he did not want to be in New Jersey as much because he enjoyed being on his farm in Maryland, that it was no longer his career goal to be a World-Wide leader of a business in BD, that he had been treating for a pre-existing PTSD condition, and that he wanted to move into a position that was less stressful (Id.).

In or around March 2019, Plaintiff spoke with Ms. Thompson and stated that he believed that his career at BD had been negatively impacted by the manner in which Mr. Conroy had previously managed him in the VP/GM, MPS role (Bennett Decl., Exhibit B, at ¶ 46).  Ms. Thompson told Plaintiff that he should contact BD's Ethics Office (Id.). When Plaintiff expressed that he was not inclined to do so, Ms. Thompson offered to contact BD's Ethics Office on his behalf, which Ms. Thompson did (Id.; Thompson Decl., at ¶ 8).

Christopher Andreychak ("Mr. Andreychak"), Defendant's Ethics Office Director, investigated Plaintiff's stated concerns about Mr. Conroy's previous management of him in the VP/GM Diagnostic Systems role, found Plaintiff's allegations to be unsubstantiated, and discussed his findings with Plaintiff (Bennett Decl., Exhibit B, at ¶¶ 50, 52). BD's Ethics Office is based in its Franklin Lakes, New Jersey headquarters, where Mr. Andreychak works (Thompson Decl., at ¶ 8 ).

In or around July 2019, Plaintiff asked Mr. Condie to meet for dinner in New Jersey (Bennett Decl., Exhibit B, at ¶ 54). In their dinner meeting conversation, Plaintiff and Mr. Condie discussed business and career-related matters, including Plaintiff's chances of being considered for a position as a World-Wide leader of a business in BD (Id.).  Plaintiff told Mr. Condie that he wanted to leave BD, and asked to negotiate a separation package (Id.). Mr. Condie told Plaintiff he would contact Human Resources about a separation agreement for Plaintiff (Id.).

Mr. Condie referred Plaintiff to Ms. Thompson to discuss the terms of his requested separation agreement (Bennett Decl., Exhibit B, at ¶ 55). In their discussions, Plaintiff and Ms. Thompson agreed to the terms of his separation agreement, including the separation date of January 1, 2020, the separation pay and benefits, and all other material terms (Id.). Plaintiff however, expressed concerns to Ms. Thompson about the non-disparagement provisions of the agreement as restricting his ability to tell people why he had decided to leave BD (Id.). Mr. Borlet did not propose language to Ms. Thompson for BD's consideration with regard to this term of the separation agreement; but instead, retained legal counsel.

During this time, BD needed to move ahead with its business transition plan in response to Mr. Borlet's stated decision to leave BD (Bennett Decl., Exhibit B, at ¶ 63). In a letter dated December 23, 2019, Ms. Thompson reiterated to Plaintiff that after he had approached Mr. Condie and her in July 2019, BD had accepted his decision to leave BD, had agreed to the terms he had requested regarding transition and his departure, and was moving forward with the new business organization structure (Id.).

Plaintiff had a telephone conversation with Ms. Thompson on January 22, 2020, to discuss the organizational changes that were being announced later that day, including that Plaintiff would remain employed through January 24, 2020 (Bennett Decl., Exhibit B, at ¶ 65).

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE ONLY PROPER VENUE FOR PLAINTIFF'S ADA CLAIM IS THE DISTRICT COURT OF NEW JERSEY**

Plaintiff's moving brief noticeably overlooks the salient point that the anchoring federal claim in this action is made under the ADA, which by statute, prescribes the exclusive venue for suits under the ADA, 42 U.S.C. § 2000 ff-6(a)(1).  The threshold inquiry in the transfer analysis is whether "venue would be proper in the proposed transferee district."  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).  Incorporating the venue provisions of Title VII, the ADA provides that actions may be brought (1) where "the unlawful employment practice is alleged to have been committed"; (2) where "the employment records relevant to such practice are maintained and administered"; or (3) where the claimant "would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district," then (4) where "the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3); <u>see</u> 42 U.S.C. § 12117(a) (establishing that "[t]he powers, remedies, and  procedures set forth in [42 U.S.C. §] 2000e-5 . . . shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter").

Title VII's venue provision is incorporated by reference in the ADA, 42 U.S.C. 12117(a), which provides:

> The powers, remedies, and procedures set forth in section[]
> 2000e-5 … shall be the powers, remedies, and procedures
> this title provides … to any person alleging discrimination
> on the basis of disability in violation of any provision of
> this Act, or regulations promulgated under section 106 [42
> U.S.C.S. § 12116], concerning employment.

See <u>Kabacinski v. Bostrom Seating, Inc.</u>, 98 Fed. Appx. 78, 82-83 (3d Cir. 2004) (noting the exclusive venue provisions pursuant to 42 U.S.C. 2000e-5(f)(3)); <u>See</u> <u>also</u> <u>Johnson v. Deloitte Services, LLP</u>, 939 F.Supp.2d 1, 3-6 (D.D.C. 2013) (transferring ADA claim to district where alleged unlawful employment practices occurred because plaintiff's choice of forum "is not an appropriate venue under this prong of the Title VII venue provision."); <u>Shoreman v. Geithner</u>, 2012 U.S. Dist. LEXIS 115259, at *2-3 (S.D. Ga., Aug. 15, 2012) (transferring Title VII and ADA claims to district where "alleged unlawful employment practices occurred" because "the specific venue provisions of Title VII are exclusive and preempt all other venue provisions.").

In this case, each of these factors weigh in favor of venue being properly in this District. As to the first exclusive venue option, Plaintiff alleges that BD violated the ADA by denying him reasonable accommodations solely related to seeking a VP/GM position with BD in New Jersey (Bennett Decl., Exhibit A, at ¶¶ 44-45). As to the second exclusive venue option, BD's headquarters and principal offices in Franklin Lakes, New Jersey, is the location of the operative facts giving rise to Mr. Borlet's claims, and is the location for the majority of the relevant documents regarding Plaintiff's employment, performance, and any complaints made during his employment, including the complaint Ms. Thompson made on Plaintiff's behalf to the Ethics Office, which is based in Franklin Lakes, New Jersey (Thompson Decl., at ¶ 8). As to the third exclusive venue option, Plaintiff would have continued to commute into the District for purposes of his employment with BD but for the alleged discriminatory conduct (Bennett Decl., Exhibit A, at ¶ 9). As to the fourth exclusive venue option, it is undisputed that BD's principal place of business is located in New Jersey (Bennett Decl., Exhibit A, at ¶ 3).

In the end, Plaintiff has not alleged any facts to establish the District of Maryland as a proper venue for his ADA claim pursuant to the exclusive venue provisions governing Title VII

claims.  Plaintiff's best connection to the District of Maryland is tied to his residency in that state, which holds no weight in the ADA venue analysis. See deRojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 269 (D.N.J. 2001) ("Although the Court appreciates that plaintiff is a citizen of New Jersey, this alone does not give him the opportunity to bring a Title VII lawsuit in New Jersey); see also Bolar v. Frank, 938 F.2d 377, 378 (2d Cir. 1991) (holding that "venue for [plaintiff's] right of action is circumscribed by the very statute that gives [him] the right to sue in the first place."); Thomas v. Exxon Mobil Oil Corp., No. 2:06-cv-144, 2007 U.S. Dist. LEXIS 9689, at *16 (N.D. Ind. Feb. 8, 2007) ("The only connection to this Court is the fact that the Plaintiff lives in this District; however, unfortunately for the Plaintiff, under Title VII [and the ADA's] exclusive venue provisions, a plaintiff's place of residence is irrelevant.").

Plaintiff's corollary arguments that his therapist and network of friends and professionals also reside in Maryland likewise fail, as those are not factors under the governing venue provision.  In his moving brief, Plaintiff asserts that his "new lead counsel" has his office in Maryland, but this purported "new lead counsel" has not appeared in this action. Plaintiff's venue transfer motion papers have been prepared and filed by his New Jersey counsel. To the extent Plaintiff argues that the office location of his purported "new lead counsel" is a factor for consideration, this argument also fails for the same reason, namely, that this is not a factor under Title VII's exclusive venue provision.

As a matter of law, this case is proper in the District of New Jersey and should not be transferred to the District of Maryland.

9

## POINT II

### PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404(A)

Plaintiff cannot meet his burden of proof to establish that transferring this matter to the District of Maryland would serve the convenience of the parties, witnesses and the interest of justice. In his Complaint, Plaintiff alleges that a substantial part of the events giving rise to his claim occurred during the times he was present in New Jersey, conducting business on behalf of BD (Bennett Decl., Exhibit A, at ¶ 9). As will be demonstrated herein, this Court should exercise its discretion to maintain this action in New Jersey under 28 U.S.C. §1404(a) because both the private and public interests heavily weigh in favor of a New Jersey forum.

A court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum. Jumara, 55 F.3d at 879; Santi v. Nat'l Bus. Records Mgmt., LLC, 722 F. Supp. 2d 602, 606 (D.N.J. 2010); Hudson United Bank v. Chase Manhattan Bank, 832 F. Supp. 881, 888 (D.N.J. 1993), aff'd, 43 F.3d 843 (3d Cir. 1994). The court has broad discretion in making determinations under Section 1404(a), and convenience and fairness are considered on a case-by-case basis. Id. (citing Commodity Futures Trading Comm'n v. Perkins, No. 06-4674, 2007 U.S. Dist. LEXIS 52326 at *3 (D.N.J. July 18, 2007)). The considerations on the transfer inquiry are not limited only to the factors enumerated in 28 U.S.C. § 1404(a). Rather, "[c]ourts … should consider 'all relevant factors to determine whether on balance the litigation would

more conveniently proceed and the interest of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879.

The Third Circuit goes beyond the three enumerated factors of §1404(a) (convenience to parties; convenience to witnesses; interests of justice), to employ a multi-factor analysis of public and private interests in deciding a motion to transfer venue. Id.  Public interests may include: (1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora.  Id. at 879 - 80.  The private interest factors incorporate the preferences of the parties in the context of the litigation, and may include: (1) the choice of forum of the plaintiff; (2) the defendant's forum preference; (3) the ease of access to sources of proof; (4) the convenience of the witnesses - only to the extent that a witness may actually be unavailable for trial in one of the fora; and (5) where the claim arose.

A.      **The Private Interest Factors Favor Maintaining Venue in the District of New Jersey.**

Generally, a plaintiff's choice of venue is entitled to consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.  See In re Consolidated Parlodel Litigation, 22 F. Supp. 2d 320 (D.N.J. 1998).  The location of "operative events" is a primary factor in determining a motion to transfer venue.  Mendoza v. U.S. Custom and Border Protection, 2007 U.S. Dist. LEXIS 18963,*3-4 (D.N.J. March 19, 2007) (internal citations omitted); Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 426-27 (D.N.J. 2000) (holding proper venue is District of New Jersey in case where substantial part of events giving rise to claims occurred in New Jersey); Krulisky v. Bristol-Myers Squibb Co., 2011 U.S. Dist. LEXIS 68449, *3-5 (S.D.N.Y., June 27, 2011) (transferring to New Jersey claims based on decisions of New

11

Jersey managers because "a substantial part of the events giving rise to the plaintiff's claims took place in New Jersey," and "none of the operative facts occurred in the Southern District of New York").

It is undisputed that Plaintiff himself elected this venue, when he filed his Complaint in this action in this District on July 27, 2020, seven months ago.  In fact, Plaintiff contemplated filing his Complaint in this District as early as February 2020 as reflected in his former attorney's communications with the EEOC regarding his Charge of Discrimination (Bennett Decl., at Exhibit C).  In her email to the EEOC Investigator, Plaintiff's former attorney stated:

> Mr. Borlet says that he worked in both the NJ and MD locations, and the people he approached for a reasonable accommodation – Jamie Condie, Steve Gunderson, Tom Polen and Claudia Curtis – are all based in the NJ location….Because so much of the harm occurred in NJ, I anticipate that's where we'll file suit.

In his Complaint, Plaintiff pled this Court's supplemental jurisdiction over his claims under the NJLAD, N.J.S.A. 10:5-12, *et seq* (Bennett Decl., Exhibit A, at ¶¶ 1, 6, 9, 79-81). Specifically, Plaintiff pled to this Court: "Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391 (b)(1) and 1391 (b)(2) because Defendant is located in and conducts business in this judicial district **and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district."** (Id. at ¶ 9). (emphasis added). In his Complaint, Plaintiff added that venue in this District is proper because "[t]he Plaintiff was employed by Defendant at the time of each of the illegal actions set forth herein **and commuted into the District of New Jersey for employment purposes at the time of many of the illegal actions set forth herein."** (Id.) (emphasis added).

The Court also considers the convenience of party and nonparty witnesses an important factors in deciding a motion to transfer venue. See Liggett Group Inc. v. R.J. Reynolds Tobacco

Co., 102 F. Supp. 2d 518, 526 (D.N.J. 2000); Chiste v. Hotels.com LP, 756 F.Supp.2d 382, 399

(S.D.N.Y. 2010) (transferring to venue of corporate headquarters where most employees who

were potential witnesses were located); see also In re Consol. Parlodel Litig., 22 F. Supp. 2d at

324 ("some courts consider the convenience of non-party witnesses the most powerful factor in

the transfer analysis.").

In the narrative of his Complaint, Plaintiff has identified thirteen (13) present or former

BD employees (Thompson Decl., at ¶ 10).   These individuals are potential witnesses to the

alleged events and will be called upon to give testimony at a deposition and at the time of trial, if

Plaintiff's claims are not dismissed by way of dispositive motion.  Eight (8) of those thirteen (13)

individuals are located in New Jersey, including seven (7) present BD employees working from

BD's Franklin Lakes, New Jersey principal offices (Id. at ¶ 11). Conversely, of those thirteen

(13) persons named in Plaintiff's Complaint, only two (2) are located in Maryland (Id. at ¶ 12).

The remaining three (3) individuals named in Plaintiff's Complaint are located in Florida, North

Carolina and France (Id.). Therefore, by far, the District of New Jersey is clearly the most

convenient for Defendant BD's witnesses and other evidence.

The interest of justice is a separate component of the Court's § 1404(a) transfer analysis.

Jumara, 55 F.3d at 879.  Here, the interests of justice do not warrant a transfer of venue, because

there is no material connection between the District of Maryland and the operative facts giving

rise to Plaintiff's claims.  It is undisputed that the center of gravity of the litigation is in New

Jersey as Plaintiff elected to file in this District and pled proper venue in this District (Bennett

Decl., Exhibit A, at ¶¶ 1, 6, 9, 79-81).  As to Plaintiff's argument that a change in venue would

be convenient for him due to his ongoing treatment for PTSD, his moving brief is devoid of any

controlling authority to support his contention that his PTSD entitles him to a forum of his

13

choosing. As a matter of law, "physical disability alone is generally not sufficient to conclude that a distant venue would effectively deprive a plaintiff of [his] day in court." Utoafili v. Trident Seafoods Corp., 2009 U.S. Dist. LEXIS 127109 (N.D. Cal. Oct. 19, 2009). In Ryan v. Hyden, 2012 U.S. Dist. LEXIS 109102, *8 (S.D. Cal. Aug. 3, 2012), citing Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995), the plaintiff alleged that he was unable to travel because of his PTSD which caused him to suffer from panic attacks. In reviewing Plaintiff's argument, the Court noted, "it is well established that Plaintiff 'may have his 'day in court without ever setting foot in a courtroom." Id. Similarly, given ongoing COVID-19 pandemic-related closures, depositions are likely to be conducted virtually in any event. Plaintiff's transparent attempt to change the forum he initially selected, and which is the only proper forum, should not be permitted, as it is not in the interests of justice.

For the convenience of all parties and in the interest of justice, this matter should remain here in New Jersey. The cognizable private interests strongly favor maintaining this matter in the District of New Jersey. There are no substantial countervailing considerations which favor a tranfer of venue to the District of Maryland. As a matter of law, Plaintiff's motion to transfer venue should be denied.

B.   **The Public Interest Factors Favor Maintaining Venue in the District of New Jersey.**

On balance, the public interest factors also weigh against a transfer of venue. As to the public-interest factors, maintaining this action in the District of New Jersey would undoubtedly spare the litigants, the witnesses, and above all, the public, unnecessary expense and inconvenience. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (U.S. 1988) ("The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the

heading of 'the interest of justice.'"); <u>Delta Air Lines, Inc. v. Chimet, S.P.A.</u>, 619 F.3d 288, 300 (3d Cir. 2010) (quotations omitted) ("In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.").

Equally important is that this case be decided by a jury comprised of New Jersey citizens who have a stronger interest in this case than do those of Maryland. <u>Dahl v. United Technologies Corp.</u>, 632 F.2d 1027, 1032 (3d Cir. 1980) (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508–09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.")); <u>see</u> <u>Windt v. Qwest Comm'ns Int'l, Inc.</u>, 529 F.3d 183, 193 (3d Cir. 2008) ("[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service.").

Given that all of the alleged operative facts giving rise to Plaintiff's claims arose while he was present in the state of New Jersey, and that Plaintiff's action is brought in part under the NJLAD, New Jersey has a far greater interest in the outcome of this action than does Maryland. In fact, Plaintiff does not allege the violation of any Maryland statute, regulation, or public policy. New Jersey has a "local interest in deciding local controversies at home." <u>Optoptics Labs. Corp. v. Nicholas</u>, 947 F. Supp. 817, 825 (D.N.J. 1995).

Since Plaintiff is claiming protection under the NJLAD, New Jersey's public interest in ensuring proper, local enforcement of its local statute is paramount. Further instructive on this point is Plaintiff's allegation that his Charge of Discrimination, which was originally filed with the EEOC's Baltimore Field Office, was cross-filed with the New Jersey Division on Civil Rights, in recognition of New Jersey's connection to the operative facts and parties in this case (Bennett Decl., Exhibit A, at ¶ 10). As Plaintiff alleges in his Complaint, the majority of the

events giving rise to his claims occurred in New Jersey, making New Jersey the only appropriate venue.

In sum, this Court should exercise its discretion to deny Plaintiff's application to transfer venue to the District of Maryland and maintain this case in the District of New Jersey, where Plaintiff's claims arose and where relevant witnesses and evidence are located. It is undisputed that all operative facts point to New Jersey, where Plaintiff commuted to on a regular basis for his employment, where the majority of his employment records are kept, and where the overwhelming majority of BD's witnesses conduct business, as the proper venue for his Complaint.

## CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiff's motion to transfer venue with prejudice, and maintain jurisdiction and venue in this District.

Respectfully submitted,

JACKSON LEWIS P.C.

John K. Bennett
Leslie A. Saint
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANT

DATED: March 1, 2021

4825-8723-5038, v. 1

16